### RICHARDS and NORRIS *v.* LADSON F. MILLS.

1. EXECUTOR AND ADMINISTRATOR: WHO ENTITLED TO ADMINISTRATION.—If the next of kin, entitled to distribution, be under age, the right to administer devolves on those who are in the next degree of kindred to the intestate, after the distributees.

2. SAME: HUSBAND NOT ENTITLED TO ADMINISTRATION IN RIGHT OF HIS WIFE.—The right of the next of kin to administer on an intestate's estate, is strictly personal; and if the next of kin be a *feme covert*, she, and not her husband, is entitled to administration, which should be granted to her alone, and not her, jointly with

her husband; and hence, it will not be error for the court to grant letters of administration to an entire stranger, who is suitable and well qualified, to the exclusion of the application of the husband of the next of kin.

3. DISTRIBUTION: EFFECT OF COVENANT OF RELEASE, AS TO RIGHT TO DISTRIBUTION.— If the father of the intestate covenant with the mother and her trustee, in articles of separation, that neither he, nor his heirs or assigns, will ever have, claim, or demand any interest or title in the mother's separate property, which afterwards, upon the death of the mother, descended to the intestate, as her heir, the half-brothers and sisters of the intestate, being the children of the father, will not thereby be prevented from taking the estate, as heirs of the intestate.

APPEAL from the Probate Court of Madison county. Hon. I. M. Simmons, judge.

The appellants, being severally the husbands of the aunt and grand-aunt of William J. Mills, deceased, applied to the Probate Court of Madison county for letters of administration on his estate, in right of their wives. Ladson A. Mills, the father of the intestate, resisted the application upon the ground that his children, the half-brothers and sisters of the intestate, were the next of kin, and would be entitled to administration, but that they were minors, and that he was next of kin after them; but being a non-resident, he could not conveniently administer, and he therefore desired the court to appoint A. P. Hill, Esq., administrator on said estate. The appellants, in support of their own application, and in resistance of the claim of the half-brothers and sisters, as distributees, and of the appellees, claimed the right to administer, and introduced articles of separation between the mother of the intestate and the appellees, dated 28th June, 1839, from which it appeared, that the parties had mutually agreed to live separate, and that the wife released all interest in the husband's property, then owned by him, or thereafter acquired, and also released him from all obligation to support and maintain her; and the wife's father, in her behalf, executed a bond to indemnify the husband against all claim of the wife to future maintenance; against all loss on account of debts contracted by her; and the husband, the appellee, in consideration thereof, conveyed to the wife, for her separate use, the property he had received by her on their marriage; and he further covenanted that neither he nor his heirs or assigns, would ever have, or claim, or demand any interest or title therein. The appellees

further showed that the wife, after separation, had died, and that her separate estate, mentioned in the articles of separation, had descended to the intestate, who was her son, and was owned by him at the time of his death, being his entire estate.   The relationship of all the parties was admitted as stated, and the court, upon final hearing, appointed A. P. Hill, administrator, he being shown by the proof, to be a gentleman of good character, and well qualified to discharge the trust reposed in him; and from this Richards and Norris appealed.

*Franklin Smith*, for appellants.

*Davis* and *Hill*, for appellee.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree of the Court of Probate of Madison county.

William J. Mills, late of said county, a minor, died intestate and childless.   He was seised and possessed, at the time of his death, of a large estate, consisting of real and personal property.   He died sometime during the past year, leaving brothers and sisters of the half-blood, the children of Ladson A. Mills, who was the father of the deceased, and who is still living.

James Richards and William Norris, applied to said court for letters of administration on the estate of the decedent.   These parties claimed the administration in right of their wives, who were the aunt and grand-aunt of the half-blood to the deceased.   The said Mills resisted their application; he claimed to be the nearest of kin to the deceased, who was competent and qualified to discharge the duties of an administrator; his children, the half-brothers and sisters of deceased, and his next of kin, being all minors, and incapacitated and incompetent for the office.   Mills was a nonresident of this State; it was inconvenient and inexpedient for him to take upon himself the administration of deceased's estate, which was situated in said county; but claiming the right to administer, he prayed the court to appoint in his stead, A. P. Hill, who was suitable, well qualified, and a resident of the county. Hill was accordingly appointed, and the petitioners appealed.

There can be no doubt that Mills was entitled to the adminis-
tration. The statute provides that the " court shall grant letters
of administration to the representatives who shall apply for the
same ; preferring first the husband or wife, and then such others as
are next entitled to distribution ; or one or more of them, as the
court shall judge will best manage and improve the estate."
Hutch. Dig. 655, § 54. The parties here, who were next of kin,
and as such entitled to distribution, by reason of their non-age
were incapacitated to assume the obligations, and incompetent to
perform the duties of administration. Mills stood in the next
degree of kindred. He was the legal, (having been appointed the
guardian of their persons and estates,) as well as the natural guar-
dian of their persons. He was unquestionably, therefore, if quali-
fied for the office, entitled to the administration. Mills, however,
was not appointed; but letters were granted to the person selected
and recommended by him.

Without conceding that the party entitled to administration upon
an intestate's estate, but who elects not to accept it, has a right to
designate the person who shall be appointed, we nevertheless, per-
ceive no error in the refusal of the court to grant the administra-
tion to the appellants, or in appointing Hill.

The right of administration, or the right to administer upon an
intestate's estate, seems always to have been regarded as a right
which is strictly confined to the person entitled. Coverture is no
incapacity for the office of administrator ; hence, if a *feme covert*
be next of kin to an intestate, administration may be granted to
her. But she cannot take administration without the consent of
the husband, inasmuch as he is required to enter into the adminis-
tration bond, which she is incapable of doing. Toller, Law of Ex.
91. But the husband, by virtue of the marriage, does not succeed
to the right. For in all cases in which the *feme covert* is entitled
to administration, as next of kin, administration is committed to
her alone, and not to her and the husband jointly; otherwise, if
he should survive, he would be administrator, contrary to the pro-
visions of the statute. Lom. on Ex. 147.

The petitioners, therefore, could found no claim to administra-
tion by virtue of their respective marriages with the aunts of the

intestate. They stood in no more favorable attitude than any stranger would have done, who might have applied for the administration. And there is certainly, in the record, nothing which shows that in rejecting the application of the appellants and granting the administration to Hill, the court did not judiciously and wisely exercise the discretion with which it was vested.

This case was argued with reference to questions not directly, at least, involved in this controversy; and counsel having requested the court to express an opinion on those questions; in compliance with that request, we deem it sufficient to state that in our opinion, the post nuptial arrangments between Ladson A. Mills and the mother of the intestate, which are alleged and admitted to have taken place, upon or after their separation, whatever may be the character of those transactions and their legal effect upon the rights of either party thereto, cannot have the least possible effect to control or direct the descent or distribution of any property of which the intestate, William J. Mills, as the owner in fee, died seised and possessed.

Decree affirmed.